670 S.E.2d 269 (2008)
In the Matter of K.J.L.
No. COA08-284-2.
Court of Appeals of North Carolina.
December 16, 2008.
Charles E. Frye, III, for petitioner-appellee Davidson County Department of Social Services.
Laura B. Beck, for appellee Guardian ad Litem.
Robert W. Ewing, for respondent-appellant.
STROUD, Judge.

I. Background
K.J.L., the minor child, was born on 18 July 2005. On 28 March 2006, the Davidson County Department of Social Services ("DSS") filed a petition alleging that K.J.L. was a neglected and dependent juvenile. Summonses naming the father and mother ("respondent") as respondents pursuant to the neglect and dependency petition were *270 filed on 29 March 2006. The father and respondent were served with the petition and respective summonses on 30 March 2006. However, neither the summons to the respondent nor to the father was signed or dated by the clerk of court's office. On 8 September 2006, the district court adjudicated K.J.L. a neglected juvenile based on a stipulation between the parties.
On 12 April 2007, DSS filed a petition for termination of the parental rights ("TPR") of respondent and the juveniles father. On the same day, a summons regarding the TPR proceeding was issued to both parents and to the guardian ad litem for respondent, but no TPR summons was issued to the juvenile as required by N.C. Gen.Stat. § 7B-1106(a)(5). The TPR petition and summons were served on respondent on 12 April 2007. The guardian ad litem for the respondent accepted service of the TPR petition and summons on 12 July 2007. The record contains no indication that the TPR summons was ever served upon the juvenile or a guardian ad litem for the juvenile. On or about 15 January 2008, the trial court terminated the parental rights of both father and respondent. Respondent appeals.

II. Jurisdiction
The threshold issue for this Court to consider on appeal is whether the trial court acquired jurisdiction of the subject matter of this juvenile action without the proper issuance of summonses. We hold that it did not.
Petitioner cites In re Howell, 161 N.C.App. 650, 589 S.E.2d 157 (2003), to contend that any jurisdictional deficiencies arising from the failure to issue summonses in either the abuse and neglect proceeding or the termination proceeding were strictly a matter of personal jurisdiction which were cured by waiver when respondent appeared and fully participated at the TPR hearing. Respondent cites In re Mitchell, 126 N.C.App. 432, 485 S.E.2d 623 (1997), to contend that the trial court did not acquire subject matter jurisdiction over the underlying juvenile file, which gave custody to the petitioner and adjudicated the minor child as neglected, because the civil summons in the neglect and dependency proceeding was not issued by the clerk of court. The distinction between the two types of jurisdiction is important sub judice, because as Howell correctly stated, defects in personal jurisdiction may be cured by waiver, 161 N.C.App. at 655-56, 589 S.E.2d at 160, but "[s]ubject matter jurisdiction cannot be conferred upon a court by ... waiver...." In re T.B., 177 N.C.App. 790, 791, 629 S.E.2d 895, 896 (2006) (citation and quotation marks omitted).

A. Summons in a Neglect and Dependency Proceeding
A juvenile action, including a proceeding in which a juvenile is alleged to be neglected, is commenced by the filing of a petition. N.C. Gen.Stat. § 7B-405 (2007). "Immediately after a petition has been filed alleging that a juvenile is abused, neglected, or dependent, the clerk shall issue a summons to the parent... requiring [him] to appear for a hearing at the time and place stated in the summons." N.C. Gen.Stat. § 7B-406(a) (2007) (emphasis added); see also N.C. Gen.Stat. § 1A-1, Rule 4(a) ("A summons is issued when, after being filled out and dated, it is signed by the officer having authority to do so."). Rule 4 of the Rules of Civil Procedure further provides: "Upon the filing of the complaint, summons shall be issued forthwith, and in any event within five days."[1] N.C. Gen.Stat. § 1A-1, Rule 4(a). The comment to Rule 4(a) makes clear that "[t]he five-day period was inserted to mark the outer limits of tolerance in respect to delay in issuing the summons." N.C. Gen.Stat. § 1A-1, Rule 4(a) cmt.
"Where a complaint has been filed and a proper summons does not issue within the five days allowed under the rule, the action is deemed never to have commenced." County of Wayne ex rel. Williams v. Whitley, 72 N.C.App. 155, 157, 323 S.E.2d 458, 461 (1984) (citation omitted and emphasis added); see also Huggins v. Hallmark Enterprises, Inc., *271 84 N.C.App. 15, 18, 351 S.E.2d 779, 781 (1987) ("The record shows that the plaintiff had a summons issued on 17 September 1982, the same day the complaint was filed. Thus, the action did in fact commence."). It follows that where an action is deemed never to have commenced, "a trial court necessarily lacks subject matter jurisdiction." In re A.B.D., 173 N.C.App. 77, 86, 617 S.E.2d 707, 713 (2005); In re Mitchell, 126 N.C.App. 432, 433, 485 S.E.2d 623, 624 (1997) ("Where no summons is issued [in a juvenile action] the court acquires jurisdiction over neither the persons nor the subject matter of the action." (Emphasis added.)).
In the case cited by respondent, Howell, the respondent mother contended that "no summons was issued in the petition to terminate her parental rights and she was not served with the petition to terminate parental rights." 161 N.C.App. at 655, 589 S.E.2d at 160. Howell addressed the two issues raised by the respondent mother together, stating that they were "similar." Id. Howell inquired only into the trial court's jurisdiction over the person of the defendant and determined that the respondent mother had waived the defense of lack of personal jurisdiction by filing an answer without raising the defense and by making a general appearance. Id. at 656, 589 S.E.2d at 160.
However, Howell did not inquire into the jurisdiction of the trial court over the subject matter of the action, which cannot be waived. See T.B., 177 N.C.App. at 791, 629 S.E.2d at 896. While failure to serve a properly issued summons is a matter of personal jurisdiction, A.B.D., 173 N.C.App. at 83-84, 617 S.E.2d at 712, failure to issue a summons is a matter of subject matter jurisdiction, Mitchell, 126 N.C.App. at 433, 485 S.E.2d at 624; County of Wayne, 72 N.C.App. at 157, 323 S.E.2d at 461; see also A.B.D., 173 N.C.App. at 86, 617 S.E.2d at 713. Therefore we believe Howell was controlled by Mitchell and Wayne County and that the Howell court should have also inquired into the trial court's subject matter jurisdiction. See In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").
We therefore conclude that the case sub judice is controlled by Mitchell rather than by Howell and that we must inquire into the trial court's subject matter jurisdiction. The purported summonses to the parents in the neglect and dependency proceedings sub judice were not signed and dated by the clerk of court, or a deputy or assistant clerk of court. When a summons is not signed by one of those individuals it has not been legally issued. N.C. Gen.Stat. § 7B-406(a); see also N.C. Gen.Stat. § 1A-1, Rule 4(b). Without a legally issued summons, the trial court did not have jurisdiction over the subject matter of the neglect and dependency proceeding.[2]Mitchell, 126 N.C.App. at 433, 485 S.E.2d at 624. Because we conclude that the trial court lacked subject matter jurisdiction, we accordingly vacate the order of the trial court adjudicating the juvenile as neglected. Vacating the adjudication order also requires that we vacate the termination order, because the adjudication order was essential to the trial court's subject matter jurisdiction in the proceeding to terminate respondent's parental rights. N.C. Gen.Stat. § 7B-1110(a) (2007) ("After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest."); In re C.W., 182 N.C.App. 214, 218, 641 S.E.2d 725, 729 (2007) ("If the court finds at least one ground [for termination] to exist, then the proceeding continues to disposition phase.").

*272 B. Summons to Juvenile in a Termination Proceeding
Even if the trial court had subject matter jurisdiction over the neglect and dependency action, as the dissent would hold, the trial court still did not have subject matter jurisdiction over the action for termination of parental rights. N.C. Gen.Stat. § 1106(a)(5) requires that a summons be issued to the juvenile in actions to terminate parental rights. We recognize that there is a split of authority in prior cases from this court, as some hold that a summons must be issued to the juvenile for the court to have subject matter jurisdiction, see In re C.T. & R.S., 182 N.C.App. 472, 643 S.E.2d 23 (2007); In re K.A.D., 187 N.C.App. 502, 653 S.E.2d 427 (2007); see also In re N.C.H., ___ N.C.App. ___, ___, 665 S.E.2d 812, 815-17 (2008) (Stroud, J., dissenting) (discussing and attempting to reconcile some of this Court's prior decisions regarding the issuance of a summons to the juvenile), while others hold that as long as a summons is served upon or accepted by the guardian ad litem for the juvenile, the court does have subject matter jurisdiction. N.C.H., ___ N.C.App. at ___, 665 S.E.2d at 813; In re S.D.J., ___ N.C.App. ___, 665 S.E.2d 818. Even if we were to accept as settled law the proposition that service on the guardian ad litem would cure the failure to issue a summons to the juvenile, no case has held that the trial court has subject matter jurisdiction in a termination of parental rights case where, as here, no summons was issued to the juvenile and no summons was served upon or accepted by the guardian ad litem for the juvenile. Accordingly, even if respondent could have waived any objection to the jurisdictional defect caused by the failure of the clerk of court, an assistant clerk or a deputy clerk to sign the neglect and dependency summonses, we conclude that the trial court did not have subject matter jurisdiction to terminate respondent's parental rights.

III. Conclusion
For the foregoing reasons, we vacate the order terminating respondent's parental rights.
VACATED.
Judge McGEE concurs.
Judge HUNTER dissents in a separate opinion.
HUNTER, Judge, dissenting.
I respectfully dissent from the majority opinion's conclusion that this Court is bound by In re Mitchell, 126 N.C.App. 432, 433, 485 S.E.2d 623, 624 (1997), and that the trial court lacked subject matter jurisdiction to terminate respondent's parental rights. For the reasons set out herein, I believe that In re Howell, 161 N.C.App. 650, 589 S.E.2d 157 (2003), is controlling and that Rule 12 of the North Carolina Rules of Civil Procedure is applicable. Therefore, I conclude that the trial court had subject matter jurisdiction, and acquired personal jurisdiction over respondent by respondent's general appearance. Moreover, I conclude that the trial court acquired personal jurisdiction over the juvenile through the guardian ad litem's general appearance in this case on the juvenile's behalf. Finally, because I believe that there were sufficient grounds to support the termination of respondent's parental rights, and that respondent was sufficiently represented by her counsel and guardian ad litem, I would affirm.

I. BACKGROUND
On 28 March 2006, the Davidson County Department of Social Services ("DSS") filed a petition alleging that K.J.L. was a neglected and dependent juvenile. DSS stated that it had provided case management services to respondent since September 2005 "in an effort to alleviate chronic neglect." According to DSS, respondent was found to be in need of services due to her inability to parent K.J.L., as well as her inability to protect the child. DSS alleged that respondent had "significant mental health issues" and cited a 8 March 2006 psychological evaluation which diagnosed respondent as suffering from "Anxiety Disorder, Depression, and Other Personality Disorder with Immature and Passive Dependent Features." DSS further alleged that respondent suffered from "diabetes *273 mellitus, type 1[,]" and "[a]s a result of mismanagement of her disease, there are concerns that she cannot take proper care of herself, much less her child."
DSS claimed that respondent had received counseling services but shown no improvement in her parenting skills. DSS further claimed that respondent had "received instruction from various professionals since [K.J.L.'s] birth regarding techniques for the care of her child; however, she has displayed significant difficulty in retaining such information and putting it into practice with the child." DSS asserted that respondent's inability to develop and retain parenting skills had impacted K.J.L.'s development.
DSS further stated in the petition that respondent and K.J.L. had resided in a homeless shelter since September 2005. DSS claimed that shelter staff had "voiced numerous concerns about [respondent's] ability to live on her own and have advised against her moving into independent housing." The staff expressed concerns about respondent's "lack of parenting capacity" and believed allowing her to leave the shelter would place K.J.L. at risk of harm. DSS alleged that the staff had "often `overlooked' the [respondent's] problematic behaviors because of their concern that, on her own, she could not appropriately parent her child."
DSS further alleged that respondent had no income for the three months prior to the petition filing and had been deemed "`unemployable,' due to her limited commitment to securing and maintaining employment." Additionally, DSS noted respondent's relationship with K.J.L.'s father, a registered sex offender and alcoholic. DSS stated that homeless shelter staff had smelled alcohol on his breath on occasion when he was transporting respondent, and respondent had maintained a relationship with the father despite DSS's concerns about K.J.L.'s safety when in his presence. On 3 April 2006, DSS obtained custody by non-secure custody order.
On 8 September 2006, K.J.L. was adjudicated neglected based on stipulations made by respondent and the father. The court continued custody of K.J.L. with DSS. The court ordered that the permanent plan for the child be reunification, but further ordered that if "significant progress is not made by ... respondent in the next six (6) months, an alternative option sh[ould] be considered." To address respondent's issues, the court ordered that respondent: (1) attend individual counseling with Daymark Recovery Services; (2) maintain a suitable residence; (3) maintain gainful employment; and (4) follow any and all recommendations of her physician, and sign a release so that DSS could monitor her medical conditions.
A permanency planning review hearing was held on 8 January 2007. The trial court found that respondent: (1) had been padlocked out of her apartment for nonpayment of rent; (2) had lost her job at National Wholesale and had not worked since; (3) had not exhibited that she could take proper care of herself; and (4) continued to exhibit her lack of parenting skills, noting that respondent attempted to feed K.J.L. in appropriate foods, had to be prompted to tend to K.J.L. during visitation, and was easily distracted. Accordingly, the court authorized DSS to cease reunification efforts with respondent and changed the plan for the child to termination of parental rights and adoption.
On 12 April 2007, DSS filed a petition to terminate respondent's parental rights. DSS alleged that respondent had neglected K.J.L. within the meaning of N.C. Gen.Stat. § 7B-101(15), and that it was probable that there would be a repetition of neglect if the child was returned to respondent's care. Additionally, DSS alleged that K.J.L. had been placed in the custody of DSS and that respondent, for a continuous period of six months immediately preceding the filing of the petition, had failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so, pursuant to N.C. Gen.Stat. § 7B-1111(a)(3).
Hearings were held on the petition to terminate respondent's parental rights on 6 and 13 December 2007. The trial court concluded that grounds existed pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) and (3) to terminate respondent's parental rights. The court further concluded that it was in the juvenile's *274 best interests that respondent's parental rights be terminated.

II. Legal Analysis-Jurisdiction
I agree with the majority that the threshold issue for this Court to consider on appeal is whether the trial court acquired jurisdiction of the subject matter of this juvenile action. I further agree that it appears that no summons was issued in this case. However, I disagree with the majority's conclusion that the failure to issue a summons deprived the trial court of subject matter jurisdiction.
The question is whether the lack of summons deprived the court of subject matter jurisdiction, or whether the failure to issue summonses were merely procedural irregularities that related to personal jurisdiction, in which case the irregularities could have been waived by respondent's general appearance in the case. Recent cases demonstrate that there is an irreconcilable conflict concerning this issue. See In re N.C.H., G.D.H., D.G.H., ___ N.C.App. ___, ___, 665 S.E.2d 812 (2008) (Stroud, J., dissenting); In re Howell, 161 N.C.App. 650, 589 S.E.2d 157; In re Mitchell, 126 N.C.App. at 433, 485 S.E.2d at 624. "Until such time as either our legislature or our Supreme Court directly addresses and resolves the confusion in this area, it is incumbent upon this Court to attempt to clarify the law." Knight v. Wal-Mart Stores, Inc., 149 N.C.App. 1, 13, 562 S.E.2d 434, 443 (2002), affirmed per curiam, 357 N.C. 44, 577 S.E.2d 620 (2003). Having thoroughly reviewed the Juvenile Code and case law, I conclude that the failure to issue a summons is a defect affecting personal jurisdiction that may be waived by general appearance.

A. Concepts and Rules
"Jurisdiction is the power of a court to decide a case on its merits; it is the power of a court to inquire into the facts, to apply the law, and to enter and enforce judgment." Jones v. Brinson, 238 N.C. 506, 509, 78 S.E.2d 334, 337 (1953). "Personal jurisdiction refers to the Court's ability to assert judicial power over the parties and bind them by its adjudication." In re A.B.D., 173 N.C.App. 77, 83, 617 S.E.2d 707, 711 (2005) (citing Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs, 158 N.C.App. 376, 378, 581 S.E.2d 798, 800-01 (internal quotations and citations omitted), reversed on other grounds, 357 N.C. 651, 588 S.E.2d 465 (2003)). "[A] court may only obtain personal jurisdiction over a defendant by the issuance of summons and service of process by one of the statutorily specified methods." Fender v. Deaton, 130 N.C.App. 657, 659, 503 S.E.2d 707, 708 (1998), disc. review denied, 350 N.C. 94, 527 S.E.2d 666 (1999); Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996) ("[j]urisdiction of the court over the person of a defendant is obtained by service of process, voluntary appearance, or consent") (citation omitted).
"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." Haker-Volkening v. Haker, 143 N.C.App. 688, 693, 547 S.E.2d 127, 130 (citing 1 Restatement (Second) of Judgments § 11, at 108 (1982)), disc. review denied, 354 N.C. 217, 554 S.E.2d 338 (2001). "`Subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel, and failure to demur or object to the jurisdiction is immaterial.'" In re T.B., J.B., C.B., 177 N.C.App. 790, 791, 629 S.E.2d 895, 896 (2006) (quoting Stark v. Ratashara, 177 N.C.App. 449, 451-52, 628 S.E.2d 471, 473 (citations omitted), disc. review denied, 360 N.C. 536, 633 S.E.2d 826 (2006)).
In Peoples v. Norwood, our Supreme Court stated:
The purpose of the summons is to bring the parties into, and give the Court jurisdiction of them, and of the pleadings, to give jurisdiction of the subject matter of litigation and the parties in that connection, and this is orderly and generally necessary; but when the parties are voluntarily before the Court, and by agreement, consent or confession, which in substance are the same thing, a judgment is entered in favor of one party and against another, such judgment is valid, although not granted according to the orderly course of procedure.
Peoples v. Norwood, 94 N.C. 167, 172 (1886) (emphasis omitted) (citing Farley v. Lea, 20 N.C. 307 (1838); State v. Love, 23 N.C. 264 *275 (1840); Stancill v. Gay, 92 N.C. 455 (1885)). Although Peoples predates the adoption of the Rules of Civil Procedure, it is evidence of the principle that the pleadings, which in this case is the petition, is used to establish the subject matter jurisdiction of the court, and the summons is used to establish personal jurisdiction. Peoples further establishes that when the party makes a general appearance, it waives defects in the process, i.e., issuance of the summons.
Other North Carolina cases predating adoption of the Rules of Civil Procedure similarly hold that failure to issue a summons is an irregularity that can be waived. See Dellinger v. Bollinger, 242 N.C. 696, 698, 89 S.E.2d 592, 593 (1955) ("[c]ivil actions and special proceedings are begun by the issuance of summons. Here no summons was issued. Even so, this is not a fatal defect for the reason that defendant's appearance and demurrer ore tenus to the petition constituted a general appearance which waived any defect in or nonexistence of a summons"); In re Blalock, 233 N.C. 493, 504, 64 S.E.2d 848, 856 (1951) ("[a] general appearance waives any defects in the jurisdiction of the court for want of valid summons or of proper service thereof"); Hatch v. R. R., 183 N.C. 617, 628, 112 S.E. 529, 534 (1922) ("appearance in an action dispenses with the necessity of process.... Indeed, there are numerous cases that although there has been no summons at all issued, a general appearance, by filing an answer or otherwise, makes service of summons at all unnecessary. Irregularity in service of summons is waived by defendant answering.... Irregularity of summons is waived by appearance and plea in bar"); Moore v. R. R., 67 N.C. 209, 210 (1872) ("[t]he Clerk of the Superior Court of Mecklenburg has no right to issue a summons returnable to the Superior Court of Cabarrus. The defendant nevertheless appeared and answered in bar. We are of [the] opinion that the irregularity was thereby waived. If no summons at all had been issued, the filing of a complaint and answer would have constituted a cause in Court").
Since 1 January 1970, the effective date of our Rules of Civil Procedure, a civil action is no longer commenced by issuance of summons, but by filing a complaint with the court. N.C. Gen.Stat. § 1A-1, Rule 3 (2007). Pursuant to Rule 4(a), "[u]pon the filing of the complaint, summons shall be issued forthwith, and in any event within five days." N.C. Gen.Stat. § 1A-1, Rule 4(a). Rule 12 of the North Carolina Rules of Civil Procedure requires that the defenses of jurisdiction over the person, insufficiency of process, and insufficiency of service of process must be raised by a pre-answer motion or in a responsive pleading. N.C. Gen.Stat. § 1A-1, Rule 12(h) (2007). Failure to do so waives these defenses. Id. "This Court has held that the North Carolina Rules of Civil Procedure do `not provide parties in termination actions with procedural rights not explicitly granted by the juvenile code.'" In re B.L.H., Z.L.H., ___ N.C.App. ___, ___, 660 S.E.2d 255, 257 (2008) (quoting In re S.D.W. & H.E.W, 187 N.C.App. 416, 421, 653 S.E.2d 429, 432 (2007)). With regard to juvenile cases, "[t]he Rules of Civil Procedure will, however, apply to fill procedural gaps where Chapter 7B requires, but does not identify, a specific procedure to be used in termination cases." Id. (citing In re S.D.W. & H.E.W, 187 N.C.App. at 421, 653 S.E.2d at 432); see also In re L.O.K., J.K.W., T.L.W., & T.L.W., 174 N.C.App. 426, 431, 621 S.E.2d 236, 240 (2005) ("the Rules of Civil Procedure apply only when they do not conflict with the Juvenile Code and only to the extent that the Rules advance the purposes of the legislature as expressed in the Juvenile Code").
The question remains whether, under the Rules of Civil Procedure and the Juvenile Code, failure to issue a summons affects personal jurisdiction or subject matter jurisdiction, and whether the failure to raise the issue by a pre-answer motion or in a responsive pleading waives the defense. In In re Howell, 161 N.C.App. 650, 589 S.E.2d 157, the respondent asserted that no summons was issued with the petition to terminate her parental rights and she was not served with the petition to terminate parental rights. Respondent, however, failed to object to either a lack of personal jurisdiction over her or insufficiency of process or service of process at any point prior to or during the termination hearing. Respondent made a general appearance at the adjudicatory hearing *276 and at the dispositional hearing. This Court, relying on and applying Rule 12 of the North Carolina Rules of Civil Procedure, held that respondent waived these issues as defenses and that the trial court gained jurisdiction through respondent's waiver. Id. at 656, 589 S.E.2d at 160. By implication, the Court's holding signified that issuance of a summons affects personal jurisdiction, not subject matter jurisdiction, and that it had jurisdiction over the subject matter even though no summons had been issued.
Another case on point, although not a juvenile matter, is Hemby v. Hemby, 29 N.C.App. 596, 225 S.E.2d 143 (1976). In Hemby, the defendant argued that a consent judgment was a nullity for the reason that no summons was issued and no pleadings were filed in the action. The Court noted that the record was contradictory as to whether a summons was actually issued. Nevertheless, the Court concluded that:
Assuming, arguendo, that no summons was issued or no complaint or answer filed, we think defendant is still bound by the consent judgment. While jurisdiction may not be conferred upon a court by waiver or consent of the parties, where the court has jurisdiction of the subject of the action and the parties are before the court, objections as to the manner in which the court obtained jurisdiction of the person or to mere informalities in the procedure or judgment may be waived, and a party may be estopped to attack the judgment on such grounds by failure to object in apt time and by acquiescence in the judgment after rendition.
Id. at 598, 225 S.E.2d at 145 (emphasis added) (citing Pulley v. Pulley, 255 N.C. 423, 121 S.E.2d 876 (1961)).
Other cases, however, state that issuance of the summons does affect subject matter jurisdiction. In In re Mitchell, 126 N.C.App. at 433, 485 S.E.2d at 624, cited in the majority opinion, the trial court concluded that because respondents appeared with counsel at an initial non-secure custody hearing, respondent had actual notice, and issuance and service of the summons was not required. This Court disagreed, holding that because no summons had ever been issued, the trial court did not acquire jurisdiction, and respondents' motion to dismiss should have been allowed. This Court noted that "[i]n a juvenile action, the petition is the pleading; the summons is the process. The issuance and service of process is the means by which the court obtains jurisdiction." Id. (citations omitted). If one were to stop reading In re Mitchell at this point, one might conclude that summons solely related to personal jurisdiction, or process, and could be waived. However, In re Mitchell then specifically states that "[w]here no summons is issued the court acquires jurisdiction over neither the persons nor the subject matter of the action." Id. (emphasis added) (citing Swenson v. Assurance Co., 33 N.C.App. 458, 235 S.E.2d 793 (1977)). I find that this Court's statement that issuance of the summons related to subject matter jurisdiction to be non-binding dicta. It was clear that the trial court in In re Mitchell lacked personal jurisdiction, therefore it was not necessary to reach the issue of subject matter jurisdiction. Furthermore, the Court clearly considered that the petitioner's failure to issue a summons could be waived by respondents' participation in the case, but declined to find waiver because "respondents cannot be held to have voluntarily submitted to the jurisdiction of the court by their appearance at the initial hearing, since they timely raised the issue of insufficiency of process at that hearing by their oral motion to dismiss." Id. at 434, 485 S.E.2d at 624 (emphasis added).
I note that In re Mitchell cites Swenson v. Assurance Co., 33 N.C.App. 458, 235 S.E.2d 793, in support of its proposition that issuance of the summons affects both personal and subject matter jurisdiction. In Swenson, a shareholder sought to restrain the holding of a stockholders' meeting for the election of directors. The shareholder argued that his action was proper under N.C. Gen.Stat. § 55-71, which did not require a summons. The Court held that the summary proceedings under N.C. Gen.Stat. § 55-71 were not applicable, and then sought to determine whether there was a civil action pending in which the court acquired jurisdiction to enter an order granting any relief. The Court cited Rule 4 of the Rules of Civil Procedure *277 and stated that it "is clear and unambiguous in its requirement that `(u)pon the filing of the complaint, summons shall be issued forthwith, and in any event within five days...[.]'" Id. at 465, 235 S.E.2d at 797 (emphasis omitted) (citing N.C. Gen.Stat. § 1A-1, Rule 4). Importantly, the Court stated that "`[s]ervice of summons, unless waived, is a jurisdictional requirement.'" Id. (emphasis added) (quoting Kleinfeldt v. Shoney's Inc., 257 N.C. 791, 794, 127 S.E.2d 573, 575 (1962)). The Court then held that "the court acquired no jurisdiction over the person of respondent or the subject matter of the action and hence was without authority to enter any order granting any relief." Id. Again, as in In re Mitchell, I find that this Court's statement that issuance of the summons related to subject matter jurisdiction to be non-binding dicta. Nowhere in Swenson does this Court cite any support for its proposition that failure to issue a summons affects subject matter jurisdiction. The Court does cite Freight Carriers v. Teamsters Local, 11 N.C.App. 159, 180 S.E.2d 461, cert. denied, 278 N.C. 701, 181 S.E.2d 601 (1971), and describe the case as analogous, noting that "[n]o complaint was filed and no summons issued." Swenson, 33 N.C.App. at 464, 235 S.E.2d at 797. In Freight Carriers, this Court found that "when a complaint is not filed or summons is not issued . . ., an action is not properly instituted and the court does not have jurisdiction." Freight Carriers, 11 N.C.App. at 161, 180 S.E.2d at 463. However, the Court failed to distinguish between personal and subject matter jurisdiction. Moreover, because no complaint was filed, the trial court in Freight Carriers clearly lacked subject matter jurisdiction, irrespective of the summons. Thus, Freight Carriers is not instructive.
The only other case cited in Swenson relating to jurisdiction was Kleinfeldt. As noted previously herein, Kleinfeldt states the proposition that "[s]ervice of summons, unless waived, is a jurisdictional requirement." Kleinfeldt, 257 N.C. at 794, 127 S.E.2d at 575 (citing Dunn v. Wilson, 210 N.C. 493, 187 S.E. 802 (1936); Stancill v. Gay, 92 N.C. 462). In Dunn, our Supreme Court stated that "[s]ervice of summons or original process, unless waived, is a jurisdictional requirement. Hence, a judgment in personam rendered against a defendant without voluntary appearance or service of process is void." Dunn, 210 N.C. at 494, 187 S.E. at 803 (citations omitted). Thus, looking back from In re Mitchell to Dunn, I conclude In re Mitchell does not properly support the proposition that issuance of a summons affects subject matter jurisdiction, and any language suggesting otherwise is merely non-binding dicta.

B. Recent Cases
More recently, this Court has held that defects in a summons affects subject matter jurisdiction in termination of parental rights cases. This Court held in In re C.T. & R.S., 182 N.C.App. 472, 643 S.E.2d 23 (2007), that the failure to issue a summons referencing R.S. deprived the trial court of subject matter jurisdiction over R.S. Based on this Court's holding in In re C.T. & R.S., this Court has held that issuance of the summons to the juvenile is required to obtain subject matter jurisdiction in termination cases. See In re A.F.H-G, ___ N.C.App. ___, 657 S.E.2d 738 (2008); In re I.D.G., ___ N.C.App. ___, 655 S.E.2d 858 (2008); In re K.A.D., 187 N.C.App. 502, 653 S.E.2d 427 (2007). Subsequently, this Court has held that service of the summons on the guardian ad litem for the juvenile, or the attorney advocate for the guardian ad litem, is sufficient to establish subject matter jurisdiction when combined with naming the juvenile in the caption of the summons. See In re N.C.H., G.D.H., D.G.H., ___ N.C.App. ___, 665 S.E.2d 812; In re J.A.P., I.M.P., ___ N.C.App. ___, 659 S.E.2d 14 (2008). In re C.T. & R.S. cites three cases as authority for its proposition that failure to issue summons to the juvenile deprives the trial court of subject matter jurisdiction. First, the Court cited the statement in In re Mitchell that "[w]here no summons is issued the court acquires jurisdiction over neither the persons nor the subject matter of the action." In re Mitchell, 126 N.C.App. at 433, 485 S.E.2d at 624. However, as discussed previously herein, I find this statement to be non-binding dicta. The second case cited is Conner Bros. Mach. Co. v. Rogers, 177 N.C.App. 560, 561, 629 S.E.2d 344, 345 *278 (2006). However, Conner Bros. relies primarily on In re Mitchell for its holding.
The third case cited by the Court in In re C.T. & R.S. is In re A.B.D., 173 N.C.App. 77, 617 S.E.2d 707. This Court stated in In re C.T. & R.S. that In re A.B.D. held that the trial court had no subject matter jurisdiction over a proceeding for termination of parental rights where the summons was not timely served. In re C.T. & R.S., 182 N.C.App. at 475, 643 S.E.2d at 25. This appears to be an oversimplification of the holding in In re A.B.D. In In re A.B.D., the respondent argued that the trial court erred and abused its discretion in refusing to set aside a 1999 termination of parental rights order because process was served after forty-one days had passed, the court lacked jurisdiction, and the order was thus void. In re A.B.D., 173 N.C.App. at 80, 617 S.E.2d at 710. This Court agreed, holding that
because the summons was served more than thirty days after its issuance, and because Respondent made no general appearance in the action, the trial court lacked personal jurisdiction over Respondent. And because no endorsement, extension, or alias/pluries summons was obtained within ninety days of the summons' issuance, the termination action, for all intents and purposes, was not filed after ninety days past the summons' 23 July 1999 issuance. The trial court therefore had no subject matter jurisdiction to enter the termination order. Because the trial court lacked both personal and subject matter jurisdiction at the time it entered the termination order, the order is clearly void, and the trial court abused its discretion in denying Respondent's motion to set aside the termination order as void pursuant to Civil Procedure Rule 60(b)(4).
Id. at 87-88, 617 S.E.2d at 714 (internal citations omitted; emphasis added). Thus, it appears that subject matter jurisdiction lapsed due to the petitioner's failure to obtain personal jurisdiction within the required timelines. When the action abated, and petitioner failed to properly revive it, the Court considered the action discontinued, and as if no petition had been filed. Without a petition, there was no subject matter jurisdiction. I disagree that In re A.B.D. stands for the proposition that the failure to issue a summons, alone, results in a lack of subject matter jurisdiction. The Court explicitly stated that if respondent had made a general appearance in the action, it would have acquired personal jurisdiction over the respondent. Moreover, if respondent had appeared, thus giving the trial court personal jurisdiction over respondent, subject matter jurisdiction would never have lapsed. Therefore, I conclude that In re C.T. & R.S. and its progeny were not bound by In re Mitchell. Instead, I believe In re C.T. & R.S. and its progeny were bound by In re Howell, that Rule 12 of the North Carolina Rules of Civil Procedure is applicable, and issuance of a summons in juvenile cases relates to personal jurisdiction, not subject matter jurisdiction.
A logical reading of the juvenile code supports these conclusions. N.C. Gen.Stat. § 7B-401 states that "[t]he pleading in an abuse, neglect, or dependency action is the petition. The process in an abuse, neglect, or dependency action is the summons." N.C. Gen.Stat. § 7B-401 (2007). N.C. Gen.Stat. § 7B-1106(a) lists all the potential parties to a termination proceeding and directs that summons be issued to them. Nothing in the statute relates to the subject matter of a termination of parental rights case. Instead, N.C. Gen.Stat. § 7B-1104 states the requirements to be set forth in the petition, which if followed would establish subject matter jurisdiction. See In re Triscari Children, 109 N.C.App. 285, 288, 426 S.E.2d 435, 437 (1993) ("[w]e find that, like the verified pleadings in divorce and juvenile actions, verified petitions for the termination of parental rights are necessary to invoke the jurisdiction of the court over the subject matter").

C. Application Sub Judice

Applying In re Howell to the instant case, I conclude that the trial court acquired personal jurisdiction over the parties. Although no summons may have been issued, respondent failed to object, by motion or otherwise under Rule 12 of the North Carolina Rules of Civil Procedure, to the insufficiency of process. Respondent made a general appearance at the adjudicatory hearing, at the dispositional *279 hearing, and filed an answer to the termination petition. I further believe that allowing respondent to cause further delay in this matter, based on her own failure to act in accordance with Rule 12, does not comport with the guiding principles of the Juvenile Code to act in the best interests of the juvenile and find permanence for the child within a reasonable amount of time. See N.C. Gen.Stat. § 7B-100 (2007), N.C. Gen. Stat. § 7B-1100 (2007); In re T.H.T., 362 N.C. 446, 665 S.E.2d 54 (2008). Accordingly, I would hold that respondent waived as a defense the failure of petitioner to issue a summons, and the trial court acquired personal jurisdiction through respondent's waiver.
Regarding the alternative ground raised by the majority opinion, the failure to issue or serve summons to the juvenile in the termination action, I believe the above analysis still applies. As stated previously herein, I believe that In re C.T. & R.S. and its progeny were bound by In re Howell, and not by In re Mitchell. Therefore, whether relating to the original petition alleging neglect, or in the termination action, I conclude that issuance and service of summons to the juvenile affects only personal jurisdiction, not subject matter jurisdiction. Applying this legal principle to the instant case, I believe that the failure to issue a summons to the juvenile was waived by the guardian ad litem's general appearance in this case on the juvenile's behalf. See In re S.D.J., ___ N.C.App. ___, ___, 665 S.E.2d 818, 821 (2008) ("[u]pon appointment by the court, it is the responsibility of the guardian ad litem to represent the juvenile in court and in all respects `to protect and promote the best interests of the juvenile[.]'") (citing N.C. Gen.Stat. § 7B-601(a) (2007)).
Furthermore, even assuming arguendo that the trial court lacked personal jurisdiction over the juvenile, I believe that respondent is not the proper party to raise this issue. "`[O]nly a "party aggrieved" may appeal from an order or judgment of the trial division.'" In re J.A.P., I.M.P., ___ N.C.App. at ___, 659 S.E.2d at 17 (quoting Culton v. Culton, 327 N.C. 624, 625, 398 S.E.2d 323, 324 (1990)). "`An aggrieved party is one whose rights have been directly and injuriously affected by the action of the court.'" Id. Respondent is not the party aggrieved by the failure to issue a summons to the juvenile. See In re Finnican, 104 N.C.App. 157, 160, 408 S.E.2d 742, 744 (1991) (father sought to void a termination of parental rights for lack of jurisdiction over his person by filing a motion to set aside the judgment pursuant to N.C.R. Civ. P. 60(b)(4) and (b)(6). This Court stated that the father was the "proper party who may contest the lack of personal jurisdiction"), overruled on other grounds by Bryson v. Sullivan, 330 N.C. 644, 412 S.E.2d 327 (1992). Thus, respondent is not entitled to raise this issue on appeal. I conclude that the juvenile, through the guardian ad litem, who is charged with the duty of protecting the juvenile's best interests, is the proper party to assert this issue.

III. Grounds For Termination
Having determined that the trial court had subject matter jurisdiction, I would next address respondent's argument that the trial court erred by concluding that grounds existed pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) to terminate her parental rights. Respondent contends that the trial court failed to make sufficient findings of fact to support its conclusion that she neglected the juvenile. Specifically, respondent asserts that the trial court failed to make a finding that K.J.L. was neglected at the time of the termination hearing. I am not persuaded by respondent's argument.
N.C. Gen.Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C.App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C.App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9, 10 (2001)).
*280 A "neglected juvenile" is defined in N.C. Gen.Stat. § 7B-101(15) as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15) (2007). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). However, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984).
In the instant case, K.J.L. was adjudicated a neglected juvenile on 31 July 2006. In the dispositional order, the trial court ordered respondent to take certain actions in order to be reunified with K.J.L. However, respondent failed to abide by the dispositional order. The trial court found in the termination order that since the dispositional hearing, respondent had "failed to take significant and meaningful action to comply with the prior Orders of the Court." First, the trial court found that respondent had failed to maintain a stable residence. Of note, the trial court found that respondent was often in arrears on her rent, and since 31 August 2006, there had been seven summary ejectment actions filed against respondent. Second, respondent was ordered to attend parenting classes. However, the trial court found that respondent had been terminated from the Community Links Program because she failed to "follow through" with the program's services. The court further found that respondent failed to attend or complete any other parenting classes. Third, respondent was ordered to maintain gainful employment. The trial court found that respondent failed to do so. Based on these findings, the court concluded that because of respondent's conduct, there likely would be a repetition of neglect should K.J.L. be returned to her care.
Although respondent challenged the validity of the court's findings regarding the adjudication of neglect due to the trial court's alleged lack of jurisdiction, as discussed previously herein, I believe that the trial court did have jurisdiction to enter the adjudicatory order. Otherwise, respondent does not argue that the trial court erred in making any of the findings of fact supporting its conclusion of neglect. Therefore, the findings of fact are deemed to be supported by sufficient evidence, and are binding on appeal. N.C.R.App. P. 28(b)(6); see also In re P.M., 169 N.C.App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). Accordingly, I conclude that the trial court's findings of fact were sufficient to support its conclusion that respondent had neglected the juvenile, and there was a probability of repetition of neglect should the child be returned to respondent's care.
Since grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to support the trial court's order, the remaining ground found by the trial court to support termination need not be reviewed by the Court. Taylor, 97 N.C.App. at 64, 387 S.E.2d at 233-34.

IV. Ineffectiveness of Counsel and Guardian Ad Litem
Next, I would address respondent's arguments that she received ineffective assistance of counsel and that her guardian ad litem breached his duty to protect her legal interests. Respondent bases her arguments on the following statement made by counsel during closing arguments at the termination hearing:
Uh, this child was taken into custody, as I recall, it was basically because [respondent] had nowhere to live, and because there [were] concerns about her medical condition, seizures, and leaving the child unattended. The Court has heard this evidence. There still seems to be two major concerns, and  and while, uh, I cannot argue that there's not statutory *281 grounds that exist for termination, uh, I would hope the Court would find that those are not sufficient to be in the best interests.
(Emphasis added.) Respondent asserts that counsel "capitulated to the petitioner's allegations" and deprived her of a right to have a trial on the merits. Respondent further asserts that her guardian ad litem failed to protect her interests when he did not object to counsel's stipulation. See N.C. Gen.Stat. § 7B-1101.1(e) (2007) (a guardian ad litem should "ensure that the parent's procedural due process requirements are met"). Again, I am not persuaded by respondent's arguments.
"Parents have a `right to counsel in all proceedings dedicated to the termination of parental rights.'" In re L.C., I.C., L.C., 181 N.C.App. 278, 282, 638 S.E.2d 638, 641 (quoting In re Oghenekevebe, 123 N.C.App. 434, 436, 473 S.E.2d 393, 396 (1996)), disc. review denied, 361 N.C. 354, 646 S.E.2d 114 (2007). "This statutory right includes the right to effective assistance of counsel." In re Dj.L., D.L., & S.L., 184 N.C.App. 76, 84, 646 S.E.2d 134, 140 (2007) (citing In re L.C., I.C., L.C., 181 N.C.App. at 282, 638 S.E.2d at 641; In re Oghenekevebe, 123 N.C.App. at 436, 473 S.E.2d at 396). "To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) her counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing." In re J.A.A. & S.A.A., 175 N.C.App. 66, 74, 623 S.E.2d 45, 50 (2005) (citing In re Oghenekevebe, 123 N.C.App. at 436, 473 S.E.2d at 396).
In In re Dj.L., this Court stated that:
This Court has previously determined that alleged deficiencies did not deprive the respondent of a fair hearing when the respondent's counsel "vigorously and zealously represented" her, was familiar "with her ability to aid in her own defense, as well as the idiosyncrasies of her personality," and "the record contain[ed] overwhelming evidence supporting termination[.]"
In re Dj.L., D.L., S.L., 184 N.C.App. at 86, 646 S.E.2d at 141 (quoting In re J.A.A. & S.A.A., 175 N.C.App. at 74, 623 S.E.2d at 50). As in In re Dj.L and In re J.A.A., I conclude that "[c]ounsel's representation, while not perfect, was vigorous and zealous." In re Dj.L., D.L., S.L., 184 N.C.App. at 86, 646 S.E.2d at 141. Counsel represented respondent at every stage of this case, beginning with the adjudicatory hearing. Counsel presented two witnesses at the hearing, including the respondent, and cross-examined each witness presented by petitioner. Regarding counsel's supposed "capitulation," it is clear from the record that the court did not consider counsel's statement an admission. Foremost, I conclude that respondent has failed to demonstrate any prejudice from her alleged deficient representation in light of the overwhelming evidence of the existence of grounds to terminate her parental rights. Thus, I would hold that respondent's ineffective assistance of counsel claim fails, as does her related claim concerning her guardian ad litem.

V. Conclusion
I believe that In re Howell, not In re Mitchell, is controlling, and that the failure to issue summons affected personal jurisdiction, not subject matter jurisdiction. Moreover, I believe that respondent waived as a defense the failure of petitioner to issue a summons, and the trial court acquired personal jurisdiction through respondent's waiver. Additionally, I believe that In re C.T. & R.S. and its progeny were bound by In re Howell, and not by In re Mitchell. Thus, I conclude the failure to issue a summons to the juvenile was waived by the guardian ad litem's general appearance in this case on the juvenile's behalf, and the trial court acquired personal jurisdiction over the juvenile through the guardian ad litem's waiver. Even assuming arguendo that the trial court lacked personal jurisdiction over the juvenile, I believe that the guardian ad litem, and not respondent, is the proper party to raise this issue.
On the merits, I conclude there were sufficient grounds to support termination of respondent's parental rights, and she was sufficiently represented by counsel and guardian *282 ad litem. Accordingly, I would affirm. I respectfully dissent.
NOTES
[1] N.C. Gen.Stat. § 7B-406(a) does not state a specific time for issuance of the summons but only that it shall be issued "[i]mmediately after a petition has been filed[.]" If there is any substantive difference between Section 7B-406(a) and Rule 4(a), it is not relevant in the case sub judice, as no summons was ever issued at any time after the filing of the petition.
[2] This case can also be distinguished from those in which a summons was issued, but not served for some extended period of time. A summons, once issued, dies a relatively slow death, and its life can be extended repeatedly. N.C. Gen.Stat. § 1A-1, Rule 4(e); see also Bryson v. Cort, ___ N.C.App. ___, ___, 668 S.E.2d 84, 89 (2008) (holding that the action "commenced" under Rule 4 on the date of an alias and pluries summons issued after the previous summons had expired, not on the date of filing the complaint approximately 16 months earlier). However, in this case, the summons was never born. DSS could have had summonses issued at any point in time, in which case the action would have been deemed to have commenced on the date of the issuance of the summons, but this was not done. In re D.B., 186 N.C.App. 556, 559-60, 652 S.E.2d 56, 58-59 (2007), aff'd per curiam, 362 N.C. 345, 661 S.E.2d 734 (2008).